TRUSTEES OF PRESBYTERY OF NEW YORK v. WESTMINSTER PRES-
BYTERIAN CHURCH OF WEST TWENTY–THIRD STREET.

(Supreme Court, Special Term, New York County.   April 4, 1910.)

1. RELIGIOUS SOCIETIES (§ 31*)—ACTIONS—PARTIES.

There is no defect of parties plaintiff in an action brought by the trus-
tees of the incorporated governing body of a religious denomination in its
behalf.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 202;
Dec. Dig. § 31.*]

2. RELIGIOUS SOCIETIES (§ 22*)—TENURE OF PROPERTY.

Prior to the act of 1875 (Laws 1875, c. 79, § 4), a religious corporation
held its temporalities wholly free from the domination of any ecclesias-
tical authority, and by a tenure so independent that it could change its
creed and denominational character without losing its hold on the prop-
erty; but its trustees could not divert it from the general religious pur-
poses contemplated in the corporation's creation.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 146;
Dec. Dig. § 22.*]

3. RELIGIOUS SOCIETIES (§ 22*)—PROPERTY—DIVERSION TO OTHER SECT.

The intention of Laws 1875, c. 79, § 4, and subsequent statutes, requiring
trustees to hold the property and administer the temporalities according
to the discipline, rules, and usages of the denomination to which the mem-
bers belong, was to restrain diversion of church property from one sect to
another, or prevent its use in support of another disconnected institution.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 146;
Dec. Dig. § 22.*]

4. RELIGIOUS SOCIETIES (§ 24*)—PROPERTY RIGHTS — POWERS OF CIVIL AND
SPIRITUAL COURTS.

Spiritual courts cannot usurp the jurisdiction or impair the functions
of the civil courts to protect and enforce property rights.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 93;
Dec. Dig. § 24.*]

5. RELIGIOUS SOCIETIES (§ 14*)—ECCLESIASTICAL TRIBUNALS—CONTROL BY
CIVIL COURTS.

The civil courts will not attempt to control the action of ecclesiastical
tribunals on questions purely ecclesiastical.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 100–
102; Dec. Dig. § 14.*]

6. RELIGIOUS SOCIETIES (§ 24*)—ECCLESIASTICAL TRIBUNALS—CONTROL BY
CIVIL COURTS.

The civil courts will not enforce or interfere with the right to the use
of church property by persons whose regular succession to the offices in
a society has been established by the appropriate church tribunal, nor
will they review its action as to the status of persons as members of the
church organization, and who are subject to the laws of the body in that
regard.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 93; Dec.
Dig. § 24.*]

7. RELIGIOUS SOCIETIES (§ 23*)—PROPERTY—EFFECT OF DIVISION OF CHURCH—
RIGHTS OF MINORITY MEMBERS.

A minority of a congregation in choosing to separate themselves into a
distinct body, and refusing to recognize the governing body of their de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nomination, can claim no rights in the property from having once been members of the church.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 147–153; Dec. Dig. § 23.*]

8. RELIGIOUS SOCIETIES (§ 9*)—MEMBERS AND TRUSTEES OF CORPORATION—RELATION TO EACH OTHER.

The members of a church and congregation are the corporators of a religious society, and the trustees are simply the governing body of the corporation.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 9.*]

9. RELIGIOUS SOCIETIES (§ 18*)—TITLE TO PROPERTY—IN WHOM VESTED.

The property belongs to the corporation which consists of the congregation and members of the society, and not to the church at large.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 111–129; Dec. Dig. § 18.*]

10. RELIGIOUS SOCIETIES (§ 11*)—INDEPENDENCE OF CORPORATION AND CHURCH.

The religious corporation is entirely independent of the church, which, by the nature of its organization, may be a subordinate part of a general organization or denomination, in which there are superior ecclesiastical tribunals with general power of control in superior judicatures over the whole membership of the general organization.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 80–86; Dec. Dig. § 11.*]

11. RELIGIOUS SOCIETIES (§ 35*)—POWER TO DISSOLVE.

Before the act of 1875 (Laws 1875, c. 381), it was not in the power of the trustees or a majority of the members of a religious society, or the County Court, or all together, to abolish the corporation or dissolve the society, unless every individual interested in the matter should concur.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 212–215; Dec. Dig. § 35.*]

12. RELIGIOUS SOCIETIES (§ 13*)—PROPERTY—POWERS OF GOVERNING PRESBYTERY.

The conditions imposed by Laws 1895, c. 723, § 15, as amended by Laws 1905, c. 193, § 1 (Laws 1909, c. 53 [Consol. Laws, c. 51]), under which a governing presbytery may declare a church extinct and take charge of its property, is the law of the state, and cannot be superseded by church discipline.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. § 99; Dec. Dig. § 13.*]

13. RELIGIOUS SOCIETIES (§ 18*)—TRUSTEES AS CONGREGATION—HOLDING PROPERTY.

The trustees of a church do not alone constitute the congregation, and the property is held for all the members thereof.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 111–129; Dec. Dig. § 18.*]

14. RELIGIOUS SOCIETIES (§ 18*)—DISSOLUTION BY GOVERNING PRESBYTERY—EFFECT AS TO MEMBERSHIP—RIGHTS AS TO PROPERTY.

Where the action of the governing presbytery of a denomination in dissolving a church is on the ground of pecuniary and spiritual turmoil, a ground not provided by statute, and not for failure to observe the discipline, usages, or creed of the denomination, according to which the trustees of the church are required to hold its property and administer its temporalities, and it does not appear the members intend to use its property for other than denominational purposes, the action of the governing body does not destroy the membership, and the church which, in such case, is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

presumably intending to observe its ecclesiastical and corporate purposes, may by proper procedure dispose of and continue to use its temporalities.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 124–129; Dec. Dig. § 18.*]

Action by the Trustees of the Presbytery of New York against the Westminster Presbyterian Church of West Twenty-Third Street, its trustees. On demurrer to the complaint. Demurrer sustained.

See, also, 121 N. Y. Supp. 1039.

Henry W. Jessup, for plaintiff.

Charles M. Parsons (Martin W. Littleton, of counsel), for defendant.

DAYTON, J. Epitomized, the complaint is as follows: Plaintiff was incorporated under chapter 206, Laws 1867 of this state, by direction of the Presbytery of New York, and is the incorporated "governing body" organized under the religious corporations law of this state. The Presbytery is a judicatory of the Presbyterian Church of the United States of America, which includes all the Presbyterian congregations within the boroughs of Manhattan and The Bronx, in this city, thereby having jurisdiction of the defendant Westminster Presbyterian Church of West Twenty-Third Street, which was organized by the union of several constituent congregations March 24, 1812, October, 1856, April 8, 1889, by appropriate ecclesiastical permission and action as a constituent part of the Presbytery of New York, and as such received its property and financial aid through and in all ecclesiastical matters subject to the control and discipline of said Presbytery. On March 17, 1908, said Presbytery at a meeting dissolved said church and congregation on account of pecuniary and spiritual turmoil, and authorized the trustees of said Presbytery to take charge of the property "belonging to the Westminster Presbyterian Church of West Twenty-Third Street, New York, including balance of deposits," and other specified funds, together with the books, papers, and records of said church, and referred the question of "utilizing said church building for religious services in the future and the method of conducting such services to the Presbyteries committee on church extension," and requested said committee to "continue religious services in the building of the late Westminster Church of West Twenty-Third Street." According to the form of government of the Presbyterian Church in the United States of America, an appeal was taken to the Synod of New York, where the action of said Presbytery was sustained, from which Synod an appeal was taken as a final court of last resort to the General Assembly of the Presbyterian Church in the United States of America, where, in May, 1909, after due ecclesiastical procedure, the action of the Presbytery was again sustained, whose action is "subject to no further review in the church courts and is binding on the parties and on the civil courts." The Presbytery took possession and charge of and conserved the church buildings and property therein contained belonging to the Westminster Presbyterian Church and paid certain judgments, but that sub-

sequently other collusive judgments upon claims unknown to plaintiff for legal services, aggregating $4,735.16, and $333.38 for plumbing, were taken by default in March and April, 1908, and January, 1909. Plaintiff continued religious work at said church, and on June 8, 1908, upon petition of members of the congregation formerly worshiping at said Westminster Church and pursuant to due proceedings under the ecclesiastical law, such church was organized November 20, 1908, as "West Twenty-Third Street Presbyterian Church, in charge of a called pastor, without at this time passing upon any of the questions concerning the control of or title to the property of the late Westminster Church of West Twenty-Third Street." The individual defendants claim, as trustees of said Westminster Presbyterian Church, to be vested with the title to the property of said church and the right to dispose of it, repudiating the right of the "Presbytery or its incorporated governing body to control their disposition thereof," and on March 30, 1909, presented to this court ex parte a petition allowing said church to sell and remove and build elsewhere. A referee was appointed upon that application. Knowledge of this coming to plaintiff, it made an application for intervention in opposition to said ex parte proceeding, and an order of reference was made. Both of said references are pending and undetermined. The Presbytery alone has the right to organize and control the successor of said Westminster Church, which, having been dissolved, leaves the "naked title" to its property in the individual defendants in trust for the plaintiff, or to the successor of said Westminster Church as plaintiff, which under the laws of this state has power to hold real property. The real property described is of the value of $300,000, subject to a mortgage for $60,000. The relief demanded is an injunction restraining any disposition of said property by the defendants, a conveyance of said property to plaintiff, and such other and further relief as may be just and equitable. Defendants demur on the grounds: (1) Defect of parties plaintiff; (2) the complaint does not state facts sufficient to constitute a cause of action.

The first ground of demurrer is overruled. Prior to the act of 1875 (Laws 1875, c. 79), it was settled that a religious corporation held its temporalities wholly free from the domination of any ecclesiastical authority, and by a tenure so independent that it could change its creed and denominational character without losing its hold upon the property. But the trustees of the corporation could not divert such property from the general religious purposes contemplated in the creation of the corporation. Matter of First Presb. Society, 106 N. Y. 251, 12 N. E. 626; Gram v. Society, 36 N. Y. 161; Petty v. Tooker, 21 N. Y. 267; Watkins v. Wilcox, 66 N. Y. 654. By section 4, c. 79, Laws 1875, and similar statutes subsequently enacted, the trustees of an incorporated church, congregation, or religious society are required to hold the property and administer the temporalities according to the discipline, rules, and usages of the denomination to which the church members of the corporation belong. Under such provisions the plaintiff contends that, when the defendant church was dissolved by the ecclesiastical decree of the Presbytery, the right

of the trustees of the Presbytery to take and administer the property of the church at once arose by virtue of another statutory provision (which I shall mention more particularly hereafter) relating to the property of extinct churches; that the only Presbyterian Church known to the law is that represented in this state by the Presbytery; that, as the Westminster Presbyterian Church of West Twenty-Third Street has been dissolved, it is excluded from the Presbyterian Church as a denominational body; that its property is held by its trustees under such conditions and is impressed with such trusts; that the Presbytery has become the beneficial owner; and that the trustees of the Presbytery are entitled to take the temporalities of said West Twenty-Third Street Church and administer them in accordance with the statutes of this state.

In Matter of First Presb. Society, supra, while the point was not decided, it was said that the intention of the statutes requiring the temporalities and property of religious societies to be administered according to the discipline, rules, and usages of the denomination to which the members of the corporation belong was doubtless to restrain in some degree the diversion of the church property from one sect to another—to prevent its use in support of some other disconnected institution. Any other construction would do violence to the express language of the statutory provisions, and in Isham v. Trustees, 63 How. Prac. 465, and First Reformed Presb. Church v. Bowden, 14 Abb. N. C. 357, the point was decided, and it was held that, if the trustees of a religious corporation so divert the temporalities from the uses of the denomination, equity will enjoin such diversion, even though but a single trustee complains, or, it seems, even at the instance of a private member of the corporation when all the trustees are engaged in the wrong. So plaintiff says that, since the judgment of the governing body dissolving the Westminster Presbyterian Church is final and conclusive on this court, it results that its property cannot be administered in accordance with the discipline, rules, and usages of the Presbyterian Church governing body, and therefore the trustees of the governing body are entitled to take and administer such property.

The judgment of the Presbytery, affirmed by the several appellate tribunals of the Presbyterian Church dissolving the Westminster Presbyterian Church of West Twenty-Third Street, may be accepted as final and conclusive. Baxter v. McDonnell, 155 N. Y. 101, 49 N. E. 667, 40 L. R. A. 670; Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666. Spiritual courts cannot, however, usurp the jurisdiction or impair the functions of the civil courts to protect and enforce property rights. In the exercise of this jurisdiction the authorities are conflicting as to how far the courts will inquire into the merits of the action of ecclesiastical tribunals. The question need not be examined minutely here, because, as above stated, the action of the ecclesiastical tribunal in this case is accepted as final, and was so accepted by the Appellate Division in a recent opinion, not yet reported, upon another phase of the litigations pending between these same parties. The civil courts will not attempt to control the action of ecclesiastical tribunals upon

questions purely ecclesiastical. Rector v. Huntington, 82 Hun, 125, 31 N. Y. Supp. 91; Westminster Presb. Church of West 23d St. v. Findley, 44 Misc. Rep. 173, 89 N. Y. Supp. 801. Nor will the civil courts enforce or interfere with the right to the use of church property by persons whose regular succession to the offices in the religious society has been established by the appropriate church tribunal, or review the ecclesiastical action in passing upon the status of persons as members of the church organization, and who are subject to the laws of the body in that regard (Baxter v. McDonnell, 155 N. Y. 83, 49 N. E. 667, 40 L. R. A. 670; Connitt v. Reformed Church, 54 N. Y. 551; Chase v. Cheney, 58 Ill. 527, 11 Am. Rep. 95; Harmon v. Dreher, Speer [S. C.] 87; Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666; Den v. Bolton, 12 N. J. Law, 206; Isham v. Trustees, 63 How. Prac. 465; Shannon v. Frost, 3 B. Mon. [Ky.] 253); and a minority in choosing to separate themselves into a distinct body and refusing to recognize the governing body can claim no rights in the property from the fact that they had once been members of the church (Watson v. Jones, 13 Wall. 725, 20 L. Ed. 666; First Ref. Presb. Church v. Bowden, 10 Abb. N. C. 1; Id., 14 Abb. N. C. 356; Gaff v. Greer, 88 Ind. 122, 45 Am. Rep. 449).

Returning to the case at bar, the members of the church and congregation of the religious society are the corporators, and the trustees are simply the governing body of the corporation. Gram v. Society, 36 N. Y. 161; Robertson v. Bullions, 11 N. Y. 243. The property belongs to the corporation, which consists of the congregation and members of the society, and not to the church at large. Baxter v. McDonnell, 155 N. Y. 94, 49 N. E. 667, 40 L. R. A. 670. It would seem, therefore, that, in insisting upon retaining the control of its own property notwithstanding the action of the Presbytery, the defendant corporation is not in the position of those who, as in some of the cases above cited, claim rights in the property of the organization as against ecclesiastical action by which their relation to the organization has been determined. The religious corporation and the church are entirely independent of each other. The church, by the nature of its organization, may be a subordinate part of some general organization or denomination in which there are superior ecclesiastical tribunals with general power of control in some superior judicatures over the whole membership of the general organization. Id. Before the act of 1875, it was not in the power of the trustees or a majority of the members of the society or the County Court, or of all of these authorities together, to abolish the corporation or dissolve the society unless every individual having an interest in the matter should concur, in which event it might have been done, because there would be no one to question the act; but, while any member or members desired to continue the connection, all the others could not by their own act dissolve it. Wheaton v. Gates, 18 N. Y. 395. From 1875 to 1895 various statutes were enacted embracing provisions for the incorporation of Presbyteries, requiring the trustees of incorporated churches to administer their property and temporalities in accordance with the discipline, laws, and usages of the governing body,

and directing the management of the property of extinct churches. Thus Acts 1875, c. 381, provided that whenever any church in connection with any such Presbytery (referring to a Presbytery incorporated as provided in the preceding chapter) should become extinct by reason of the death or removal of its members, it should be lawful for such corporation (the trustees of the Presbytery) to take possession of the temporalities belonging to the society formed in connection with such extinct church and manage and dispose of the same. Acts 1877, c. 177, gave to the Presbytery to which the church belonged the right to "determine when any church is extinct, provided that no church having more than nine resident members shall be declared extinct unless it has failed for three consecutive years to maintain the stated preaching of the gospel." Here we have a positive provision of law defining the power of a Presbytery to declare a church extinct for the purpose of taking and managing its property. The language of this provision was changed in later statutes which had the same purpose; but the difference in phraseology does not indicate a plain intention to establish a different rule. Munzinger v. United Press, 52 App. Div. 341, 65 N. Y. Supp. 194, and cases cited. Ultimately the subject found expression in the act of 1895 (Laws 1895, c. 723), as amended by the act of 1905 (Laws 1905, c. 193) carried into Laws 1909, c. 53 (Consol. Laws, c. 51), the words in brackets being added by the act of 1909:

"Such incorporated governing body may decide that a church, parish or society, in connection with it or over which it has ecclesiastical jurisdiction, has become extinct if it has failed for two consecutive years next prior thereto to maintain religious services according to the discipline, customs and usages of such governing body, or has had less than thirteen resident attending members paying pew rent or making annual contribution towards its support, and may take possession of the temporalities and property belonging to such church and manage, or may, in pursuance of the provisions of law relating to the disposition of real property by religious corporations, sell or dispose of the same and apply the proceeds thereof to any of the purposes to which the property of such governing religious body, is devoted, and it shall not divert such property to any other object. And for the purpose of obtaining a record title to the land and church edifice * * * the surviving trustee or trustees of said extinct church [or if there be no surviving trustees, then a surviving member of said extinct church] may, without a consideration being paid therefor by such incorporated governing body, convey to it said land and church edifice * * * subject, however, to an order of the Supreme or County Court, based upon a petition reciting that said church has become extinct, the names of its surviving trustee or trustees and the names of its members, who must have given their consent to the making of said conveyance."

This language does not permit the involuntary dissolution of the church by the Presbytery in order that the trustees of the Presbytery might administer the church property, and certainly the title is preserved in the trustees, for it is only by consent that it may be conveyed to the trustees of the Presbytery. The statute, then, is the law of the state under which alone a Presbytery governing body may take charge of the property of a church which had been connected with it, and a statute of the state cannot be superseded by church discipline. Matter of Third M. E. Church, 67 Hun, 86, 21 N. Y. Supp. 1105, affirmed 142 N. Y. 638. 37 N. E. 567.

The complaint alleges as the cause of the action of the Presbytery. that the Westminster Presbyterian Church of West Twenty-Third Street was in "pecuniary and spiritual turmoil, and was from time to time under the surveillance and discipline of the Presbytery, with the result that finally * * * the Presbytery as a judicatory of the church * * * took action," which action, as appears from the minutes set out, consisted of a resolution that the Presbytery, "in view of the conditions prevailing in that church, deem it for the best interests of the particular congregation and of the church at large that said church and congregation be dissolved, and therefore declares that same be, and hereby is, dissolved." There is nothing in the condition and action alleged which shows the right under the statute to take and administer the property of the church. As already pointed out, the trustees of the church do not alone constitute the corporation, and the property is held for all the members thereof. The action of the Presbytery did not destroy the membership in the corporation. The action "dissolving" defendant church was not because of its failure to observe the discipline, usages, or creed of the Presbyterian Church. It is not alleged that the members of defendant church intend to use its property for other than Presbyterian denominational purposes. Should such facts appear, it may be that equity and good conscience would require the court to prevent such subversion of the purposes for which defendant church was organized by and under the authority of the Presbyterian Church. The alleged "dissolution" was, however, upon grounds not provided by statute, and defendant church, presumably intending to continue to observe its ecclesiastical and corporate purposes, may by proper procedure dispose of and continue to use its temporalities.

In my opinion the complaint fails to state facts sufficient to constitute a cause of action.

The second ground of demurrer is therefore sustained, with leave to amend on payment of costs.