17   203
30* 702
17   208
30* 886

[No. 1106.]

# RENO WATER COMPANY, RESPONDENT, *v.* B. F. LEETE, APPELLANT.

POSSESSION—PRESUMPTIVE EVIDENCE OF TITLE.—*Held*, that proof of possession of certain water works was presumptive evidence of ownership.

WATER RIGHTS UNDER DIFFERENT SYSTEMS OF WATER WORKS.—Appellant acquired the right to use one inch of water from one system of water works, and claimed that these works had been replaced by the plaintiff: *Held*, upon a review of the facts, that appellant's claim could not be sustained; that the evidence showed that there were two different systems of water works, which were entirely separate and distinct, and that appellant had acquired no right to use the water from the works owned by plaintiff.

AUTHORITY OF CORPORATION TO COMMENCE SUIT.—*Held*, that the president of the corporation was authorized to institute suit to enjoin defendant from the use of water belonging to the corporation, without express authority from the board of trustees.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts appear in the opinion.

*Lewis & Deal*, for Appellant:

After reviewing the evidence, claim that in any view that may be taken of this case, Hill is the owner of the reservoir and the system of pipes to which we are attached, or else he is a tenant in common of the whole system with the plaintiff. In either case our right is good; for if it belongs to Hill alone, then the plaintiff has no right to claim the water after it

turned into our reservoir and pipes. It would then either belong to Hill or Leete, under his deed. It would answer our purpose, no matter whether it belonged to one or the other; for if to Hill, then the plaintiff has no cause of action, and of course not if it belongs to Leete. But if Hill is a tenant in common (and of that there is no showing at all), then Leete is just as much entitled to the water as if Hill were the sole owner, for two reasons:

First—Because his deed to Leete is good, notwithstanding the plaintiff may have some interest in the water, the deed of one tenant in common giving us a right to a possession with the others.

Second—There is no tenancy in common, but Hill is the sole owner of the pipes and water to which we are attached, and would undoubtedly have the right to collect water rates from any person attached thereto, except such as occupy defendant's position, and the plaintiff would have the right to collect from those attached to its system.

I. The trustees have never authorized this suit. We admit that the complaint need not allege any such authorization, because the court will presume it; but we have shown affirmatively that they have not authorized it. The corporation is only reliable for acts authorized by it—not for the action of any one who may choose to act for it or in its name.

*P. Evans* and *R. M. Clarke*, for Respondent :

I. The property in question is " an interest in lands," and the title thereto can only be passed by operation of law or by conveyance in writing. (Stat. Frauds, sec. 55; Ang. on Wat. Cour., sec. 168.)

II. Respondent was the owner and in possession of the water works and water right in question, and was engaged in distributing water, collecting rates, etc. This was sufficient. Possession and use are *prima facie* evidence of title, and sufficient to maintain this action. (*Sankey* v. *Noyes*. 1 Nev. 68; *McFarland* v. *Culbertson*, 2 Nev. 280; *Staininger* v. *Andrews*, 4 Nev. 59; *Doran* v. *C. P. R. R. Co.*, 24 Cal. 245; *Houseman* v. *Case*, 12 Cal. 290.)

III. The title to corporate property is vested in the corpora-

tion, not in the stockholders. (*Wright* v. *Oroville M. Co.*, 40 Cal. 20, 26.) The fact that Hill was at one time the sole stockholder of respondent, neither terminated the existence of the corporation nor vested in Hill the legal title to the corporate property. (Ang. & Ames on Corp., sec. 192, 557, 559; *Wilde* v. *Jenkins*, 4 Paige, 481.) Hill, therefore, never had the title to the respondent's works or water, or any part thereof, and hence could not grant or convey such title had he attempted to do so.

IV. But if Hill, by virtue of owning respondent's stock, or otherwise, had ever became the owner of respondent's works and water, that fact would in no sense alter this case. Hill's deed to appellant was prior to such ownership by Hill of the stock of respondent, and for a different right and distinct property, and there is no principle of law or rule of equity by which a previous deed for a particular thing can be made to convey a subsequently acquired and different thing—a thing to which the grantor neither had nor pretended to have any title or right at the time the conveyance was made.

V. Hill's abandoning his old works did not put the title, or any part of the title, to the respondent's works in him, much less in appellant. Nor did Hill's notice to his "old customers" or consent that appellant might connect with respondent's pipes, vest any legal right or title in appellant. It was at most a mere parol license revocable at will.

By the Court, BELKNAP, J.:

In the year 1874 George B. Hill was the owner of a system of water works in the town of Reno, by which the inhabitants of a portion of the town were supplied with water. The water thus furnished was taken from the Truckee river by means of two ditches, known as the English mill and Countryman ditches. Whilst Hill was engaged in operating this system of water works—the pipes of which were wooden— he conveyed to the defendant a town lot, "together with," as the record recites, "one inch of water from the Hill system of water pipes."

At this time there was another system of water works in this town entirely separate and distinct from the Hill system

of wooden pipes—the pipes of which were of iron, supplied by water from the Larcomb ditch. These works were owned by a corporation named the Reno Water Company, the plaintiff in this suit. During the year 1876 Mr. Hill, before mentioned, became the owner of all of the stock of this corporation, and personally superintended its business. Thereupon he abandoned the system of wooden pipes and extended the line of iron pipes, and obtained all of the water used in supplying them from another ditch leading from the Truckee river, called the Orr ditch.

Defendant Leete, with the consent of Hill, caused a supply pipe of one inch capacity to be connected with one of the plaintiff's mains, as extended, and thereby furnished his residence with water. By this means he was deriving his water supply at the time of the commencement of this suit.

This suit is brought to obtain a judicial determination of the rights of the parties in the premises, and to enjoin defendant from further use of the water.

The cause was tried by the court, without the intervention of a jury, and a decree entered in favor of the plaintiff.

The first objection made by the appellant is that the evidence on the part of the plaintiff was insufficient to justify the decree, in this; that it did not show any right or title in the plaintiff to the water works described in the complaint.

Upon this point the record states that " plaintiff introduced evidence tending to show that it was in possession of certain works, known as the Reno Water Works, consisting of water pipes, mains and reservoirs; that it had been so in possession since March, 1879; that it had collected water rates. It was also shown by plaintiff that since it went into possession it had increased the extent of its works." This evidence is sufficient to avoid the objection. Possession, under the circumstances established, has always been considered presumptive evidence of ownership,

The next objection embraces the question whether, under the facts as stated, the judgment of the court should not have been for the defendant instead of the plaintiff.

The deed under which defendant claims his right is not in this record, but it purports to have been a conveyance of the

right to use one inch of water flowing through the wooden pipes constituting the Hill system of waterworks. This system, appellant contends, has been replaced by the system now being operated by the plaintiff. But this contention is not sustained by the facts set forth in the record. The two systems have always been entirely separate and distinct; they were never, in any respect, connected or consolidated. Nor were the waters by which the systems were respectively supplied taken from the same source. At the time of the execution of the conveyance the water used in the Hill pipes was taken from the English mill and Countryman ditches. Plaintiff has never received water from either of these ditches; its supply has been furnished first by the Larcomb ditch, next by the Orr ditch, and at the present time by the Highland ditch.

Upon these facts it is apparent that the deed received by the defendant from Hill carried no interest in the water works of the plaintiff.

Nor did the permission to divert the water given by him when he was the superintendent of the corporation, and owner of the whole of its stock, pass an interest in the property.

That was simply a parol license, revocable at will, and until recalled justified an act which would otherwise have been a trespass. A deed from Hill as such shareholder would have carried no interest in the corporation; such transfer could only be made by the deed of the corporation itself.

Lastly, it is objected that this suit was commenced and is prosecuted without the authorization of the corporation plaintiff.

Upon this point the book containing the record of the meetings of the board of trustees was introduced, and no authorization for instituting the suit appeared therein, nor did the secretary of the board know that any action in that respect was ever taken by the board.

In the general course of business of corporations it often becomes necessary to institute legal proceedings for the enforcement of their rights. Prompt action is frequently indispensable, and the delay consequent upon the calling together of a board of directors and the passing of a formal resolution of authorization might produce damaging results.

This suit was commenced at the instance of the president of the plaintiff, the chief executive officer of the corporation. As such officer he was presumably empowered to commence suits in its name, and perform such other acts in its behalf as the necessities of the case demanded. A question similar to this one arose in the case of *Ricord* v. *C. P. R. R. Co.*, 15 Nev. 177. That was an action to recover damages for malicious prosecution. The corporation contended that there was no proof that the prosecution was instituted by its authority. The court, after stating that the prosecution of those whose criminal acts have injured a corporation is not outside the legitimate power of such corporation, proceeded to consider the character of proof required to connect the corporation with the prosecution, and said: " For this purpose we do not consider it necessary to produce a resolution of its board of directors. It is absurd to suppose that such a corporation will adopt a regulation requiring its directors to be convened every time a clerk is to be arrested for embezzlement, or a tramp for breaking into its cars. On the contrary, it is only reasonable to presume, in the absence of opposing proof, that its legal advisers, acting in conjunction with such of its servants and agents as have knowledge of the facts, will be authorized to institute the proper proceedings in such cases."

The judgment and order of the district court should be affirmed, and it is so ordered.