[No. 4229.  Decided April 30, 1903.]

W. H. FERNALD, *Respondent,* v. SPOKANE AND BRITISH
COLUMBIA TELEPHONE AND TELEGRAPH COMPANY, *Appellant.*

CORPORATIONS — POWERS OF VICE PRESIDENT — EMPLOYMENT OF COUNSEL.

The acts of counsel for a corporation appointed by a vice president thereof are binding on the corporation, where the president had resigned and left the country, and the vice president was the acting president.

SAME — INSOLVENCY — APPOINTMENT OF RECEIVER.

The action of the trial court in appointing a receiver for a corporation upon the application of a creditor will not be disturbed on appeal on a showing made that the corporation had been conducting a telephone business which it had recently abandoned upon a transfer of its franchises and business to another company; that it was allowing its entire tangible property, consisting of wires, poles and telephone instruments to go to ruin, without any effort to care therefor; and that the board of trustees cannot agree upon the management of its affairs, and that the company must continue without official management, unless a receiver be appointed.

Appeal from Superior Court, Spokane County.—Hon.
LEANDER H. PRATHER, Judge. Affirmed.

*Post, Avery & Higgins, Stoll & Macdonald* and *M. J.
Gordon,* for appellants.

*Thomas C. Griffitts* and *Cullen & Dudley,* for respondent.

PER CURIAM.—Respondent brought this suit against the appellant Spokane & British Columbia Telephone & Telegraph Company and its codefendants Inland Telephone & Telegraph Company and the Pacific States Telephone & Telegraph Company.  It is alleged in the complaint that

the first-named company erected a telephone line between
Northport and Spokane, in the state of Washington, to-
gether with a branch line from Bossburg to the interna-
tional line between the United States and Canada, con-
necting with the town of Greenwood, in the Province of
British Columbia, Canada; that for the purpose of expe-
diting its business and in furtherance of the purposes of
its creation, said company entered into a contract in writ-
ing with its first above named codefendant company,
whereby, among other things, it was provided that the
latter company would permit the former to connect the
Spokane end of its line with the switch board of the latter
at Spokane, and that the employees of the latter company
should promptly receive all telephone business offered by
the former for transmission over the line of the former
to Spokane, and should also transfer all business originally
received at Spokane for transmission to points on the line
of the former company.    It is alleged that the Spokane
& British Columbia Telephone & Telegraph Company duly
performed all conditions of the contract required of it,
but that the Inland Telephone & Telegraph Company after
a time disregarded its contract, and in violation thereof
refused to receive messages originated on the line of the
former company for transmission to Spokane, and likewise
refused to receive messages at Spokane for transmission
over said line; that it caused the wires connecting the
former company's line with the said exchange office in
Spokane to be cut, thus disconnecting the line and paralyz-
ing the entire business of the former company, to its
great damage; that said Spokane & British Columbia
Telephone & Telegraph Company contracted with the Co-
lumbia Telephone-Telegraph Company of Canada for the
reception and transmission of telephone business, and had

from that source made large sums of money and built up a large, thriving, and growing business; that the destruction of its business by the wrongful acts aforesaid of the said Inland Telephone & Telegraph Company prevent, and will continue to prevent, the performance of said contract with the Canadian company; that the Inland Telephone & Telegraph Company is the owner of a rival line between Northport and Spokane, and that for the purpose of ruining and destroying the business of the Spokane & British Columbia Telephone & Telegraph Company it caused all the wires of the latter company in the city of Spokane to be cut and destroyed, and the insulators, cross-arms, and other apparatus to be carried away, said destroyed wires and apparatus covering a distance of about three miles; that on the first day of March, 1898, and during the uninterrupted operation under the contracts aforesaid, the respondent loaned the Spokane & British Columbia Telephone & Telegraph Company the sum of $15,000, which was secured by a mortgage upon all the corporate rights, privileges, franchises, telephones, poles, wires, contracts, leases, agreements, property, and contract rights of every kind, legal and equitable, of said company; that the damages suffered by the Spokane & British Columbia Telephone & Telegraph Company because of the destruction of its business aforesaid were each and all damages to respondent as mortgagee, and impaired and destroyed the security in his said mortgage contained; that on June 29, 1899, said Spokane & British Columbia Telephone & Telegraph Company commenced an action for damages against said Inland Telephone & Telegraph Company, alleging as the basis of recovery the matters and things in this complaint alleged, together with other things, and claiming damages in the

sum of $205,000. It is further alleged that in August, 1901, certain persons, claiming to represent the two companies, the parties to said suit, contriving and intending to cheat and defraud said respondent and to destroy his security as aforesaid, fraudulently agreed together to dismiss said action without respondent's knowledge or consent and in fraud of his rights as mortgagee as aforesaid, and in pursuance thereof procured a dismissal of the cause on the pretended ground that the controversy had been settled between the parties. A second cause of action alleges the insolvency of the respondent's mortgagor company, and that it is making no provision for the payment of the mortgage; that since the commission of the acts above mentioned, by which respondent's security was impaired, the said Inland Telephone & Telegraph Company has transferred its rights, privileges, franchises, and business to the Pacific States Telephone & Telegraph Company, and has thereby deprived itself of the ability to respond in damages for said wrongful acts, in violation of its said contract. Allegations are made to the effect that the entire business of the Spokane & British Columbia Telephone & Telegraph Company is about to be discontinued and its entire tangible property, consisting of hundreds of miles of telephone wires and poles and hundreds of telephone instruments, has been left to go to ruin, and the whole concern has been thereby wrecked; that no effort is made to care for said property, to attend to the business and affairs of said company, or to make any provision for the payment of the interest or principal of said mortgage; that the board of trustees of said company can not hold a legal meeting or agree upon the management of its affairs, and that the company must continue without official management, unless the court shall appoint a receiver. Judg-

ment for $205,000 is demanded in accordance with the foregoing allegations against the Inland Telephone & Telegraph Company and the Pacific States Telephone and Telegraph Company, and the appointment of a receiver for the Spokane & British Columbia Telephone & Telegraph Company is prayed.

After the complaint was filed, the following written appearance was made in the cause:

"The defendant the Spokane & British Columbia Telephone & Telegraph Company, by its attorneys, Danson & Huneke, hereby appears in the above-entitled cause, and consents that plaintiff's application for a receiver herein may be at once heard and determined, and hereby joins in said application, subject to the judgment of the court as to the necessity of having a receiver, and consents that oral testimony may be taken herein on said application, if desired or required."

Thereupon the court heard evidence and appointed a receiver for said company. Later a motion was made by other counsel, who claimed to represent said company, asking an order vacating and setting aside the order appointing the receiver, on the alleged grounds that the receiver was appointed without notice to said company, and that it had never appeared or consented to said appointment; that the attorneys who attempted to appear when the application for a receiver was heard had no authority to waive notice or to appear in the action at all on behalf of the said company. The motion also alleges that the person appointed receiver is not a fit and competent person to act as such. Upon the hearing of this motion evidence was introduced and the court appointed a new receiver, but refused to vacate the order appointing a receiver. From the order refusing to vacate the former order appointing a receiver this appeal is prosecuted.

The record shows that the president of said company had resigned and was absent from the country; that one Babcock, a trustee, was vice-president and acting president; that he employed Danson & Huneke as attorneys for said company and authorized them to make the written appearance above set forth. Had the vice-president and acting president the power to authorize such appearance?

"The president of a corporation, being its chief executive officer, may appear and answer for it and employ counsel for its defense. Counsel whom he thus employs can bind the corporation by their actions in the case, within the ordinary powers of counsel, and this, too, even though the circumstances show that the president acted so improperly in employing the counsel that he might properly be held responsible for his breach of trust in the employment of the counsel." 17 Am. & Eng. Enc. Law, p. 131.

See, also, *Colman v. Oil Co.,* 25 W. Va. 148; *Recamier Mfg. Co. v. Seymour,* 5 N. Y. Supp. 648; *Reno Water Co. v. Leete,* 17 Nev. 203 (30 Pac. 702); *Potter v. New York Infant Asylum,* 44 Hun, 367; *Wetherbee v. Fitch,* 117 Ill. 67 (7 N. E. 513); *Davis v. Memphis City Ry. Co.,* 22 Fed. 883; Weeks, Attorneys at Law (2d ed.), § 190.

From the authority last cited we quote as follows:

"When the president of a corporation authorizes an attorney or solicitor to prosecute or defend a suit, or to commence any legal proceeding in which the corporation is interested, the attorney or solicitor will be authorized to appear for the corporation, and such corporation will be bound by his acts. And if the president exceed his authority in retaining counsel, the corporation must look to him for any damages sustained in consequence of such unauthorized act."

In view of the foregoing authorities, we think the cor-

poration should not now be heard to say that it did not authorize the appearance by which notice of the hearing upon the application for a receiver was waived. In further view of the allegations of the complaint, the substance of which is hereinbefore stated at length, we shall not undertake to say that the court should have found, upon the hearing of the motion to vacate its former order, that no ground for a receivership was stated in the complaint, or was shown at the time of the application.

The judgment is affirmed.